# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**UNITED STATES OF AMERICA**
          **Plaintiff,**

          **v.**                                                        **Case No. 17-CR-42**

**FEEONQUAY JENKINS**
          **Defendant.**

---

## DECISION AND ORDER

The government has charged defendant Feeonquay Jenkins with four counts of sex trafficking adult females by force, fraud or coercion, one count of sex trafficking a child, and one count of unlawful firearm possession. Defendant moves for disclosure of the grand jury testimony of N.S., who allegedly worked for defendant as a prostitute. N.S. recently told a defense investigator that she lied during her previous testimony, and defendant contends that disclosure of the grand jury transcript is warranted in anticipation of a possible motion to dismiss the indictment.

The court may authorize disclosure of a grand jury transcript "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Fed. R.Crim. P. 6(e)(3)(E)(ii). The court may dismiss an indictment where the government knowingly presented false testimony, which substantially influenced the grand jury's decision to indict. See, e.g., United States v. Strouse, 286 F.3d 767, 770-71 (5th Cir. 2002); United States v. Roderick, No. 15-CR-312, 2017 U.S. Dist. LEXIS 90809, at *8-9 (N.D. Ill. June 13, 2017); see also United States v. Vincent, 416 F.3d 593, 600 (7th Cir. 2005) ("Assuming solely for the purposes of argument that the government presented evidence

that it knew to be inaccurate, the district court could dismiss the indictment only if it is established that the violation substantially influenced the grand jury's decision to indict, or if there is grave doubt that the decision to indict was free from the substantial influence of such violations.") (internal quote marks omitted).

In his motion, defendant indicates that N.S. has been involved in prostitution with Felix Patton (defendant's father) dating back to 2011. N.S. was also defendant's girlfriend at one point. (R. 83 at 1 ¶ 1.) On May 20, 2021, N.S. provided to a defense investigator a handwritten statement in which she indicates that she "lied to the feds . . . on [the] stand." She states that she and defendant were just boyfriend and girlfriend, and he never harmed or mistreated her. "I was told by Felix Patton to lie to the feds." (R. 83-1 at 1.) Defendant further indicates that, during a previous interview with the FBI following her grand jury testimony, N.S. told agents that she was not fully truthful in her grand jury testimony. (R. 83 at 2 ¶ 4.) Defendant contends that there is accordingly reason to believe that the indictment in this case was obtained, at least in the part, based on materially false testimony. Even if the government did not know at the time of her grand jury testimony that N.S.'s testimony was false, it later learned via the FBI interview that her testimony was, in part, false. (R. 83 at 2 ¶ 5.) Defendant concludes that, while it may be proper to bring a motion to dismiss, he cannot make that determination without a review of the grand jury transcript regarding what assertions were made to the grand jury concerning his involvement with N.S. and whether any false testimony was prejudicial. (R. 83 at 2 ¶ 6.)

Defendant's motion fails. As the government notes its response, neither N.S.'s April 2018 statement to the FBI nor her recent recantation letter provide a clear basis for concluding that any prior inculpatory statements she made to the grand jury were false.

During the April 2018 FBI interview, N.S. discussed her involvement with defendant,

2

Case 2:17-cr-00042-LA   Filed 11/24/21   Page 2 of 5   Document 88

conducting prostitution dates for him.  (R. 87-1 at 1.)  She further stated that defendant treated

her badly while she worked for him, providing a number of specific examples.  She also

mentioned others who worked for defendant.  After a time, she left defendant and went to work

for Patton.  (R. 87-1 at 2.)  Defendant then wanted her to return and work for him.  N.S. also

narrated for agents a recorded phone call between herself and defendant in which they

discussed "the game" (i.e., the prostitution business).  (R. 87-1 at 3.)  N.S. further discussed

her August 2016 grand jury testimony, advising that "she was scared and battling addiction and

that was why she did not want to talk about the things that happened with [defendant]."  (R. 87-

1 at 3.)  She then discussed a threat she received from another man via Facebook about the

testimony, as well as her messages with defendant.  (R. 87-1 at 3-4.)

> At this point in the interview, [N.S.'s] demeanor changed and she told the
> investigators she was not going to do this to JENKINS and that she would lie at
> the trial. She did not tell the full truth at grand jury in August because she was
> scared and was loyal to JENKINS. After being advised of the penalties for
> perjury, [N.S.] said she would be willing to go to prison because she is not going
> to testify against JENKINS. She restated that she would lie at trial and say she
> does not remember when she is asked questions at JENKINS' trial.

(R. 83-1 at 4.)

Nothing in this statement indicates that N.S. falsely inculpated defendant to the grand

jury.  To the contrary, it appears she held back out of a sense of loyalty to defendant.  She then

asserted that she would "lie" at defendant's trial and refuse to testify against him.

The recent letter also provides no basis for concluding that any inculpatory statements

N.S. made to the grand jury were necessarily false.  In contrast to the details she provided

during previous statements, the letter is essentially a blanket recantation: "it never happen."

(R. 83-1 at 1.)  As the Seventh Circuit has noted, claims of recantation are "depressingly

familiar . . . in any criminal trial involving inmate witnesses."  United States v. Fountain, 840

3

F.2d 509, 514 (7th Cir. 1988). A prosecutor is nevertheless "entitled to present such testimony to the grand jury for whatever it is worth." Id. To be clear, I am vouching for neither version of N.S.'s statement; for present purposes, it suffices to say that the evidence defendant presents is insufficient to demonstrate perjury.

Moreover, even if I were to credit the recantation, the record contains no evidence that the government knew at the time that N.S.'s grand jury testimony was false. The FBI interview occurred about two years later and the recantation letter was produced about five years later. See United States v. Miller, No. 08 CR 629, 2013 U.S. Dist. LEXIS 93402, at *67-68 (N.D. Ill. July 3, 2013) (denying motion for grand jury disclosure where the witness recently recanted, but there was no evidence the government was aware of the alleged falsity at the time).[1]

Finally, defendant cannot demonstrate that any false statements N.S. made substantially influenced the grand jury's decision to indict. The government states, without contradiction, that N.S. is not a charged victim in this case.[2] To the extent N.S. is now recanting her previous allegations that defendant harmed or mistreated her, none of the counts of the indictment rest upon such allegations. Defendant makes no claim that her recantation impacts any statements

---

[1]Some courts have held that, even if the government did not know the testimony was false when presented to the grand jury, it may not take a defendant to trial on a charge it now knows was obtained through false testimony. See, e.g., United States v. Liciardello, 93 F. Supp. 3d 365, 368-69 (E.D. Pa. 2015). As indicated above, witness recantation is not an uncommon occurrence, and prosecutors may, depending on the circumstances, proceed in good faith with a case based on a witness's original, inculpatory version of events. It will, of course, be up to the government to decide whether it will call N.S. at trial in this case. As discussed below, N.S. is not one of the victims in the charged sex trafficking counts.

[2]I afforded defendant a chance to file a reply, but he has not done so.

4

she may have made about his treatment of others.[3]

**THEREFORE, IT IS ORDERED** that defendant's motion (R. 83) is denied.

Dated at Milwaukee, Wisconsin, this 24th day of November, 2021.

/s/ Lynn Adelman
LYNN ADELMAN
District Judge

---

[3]To the extent defendant seeks grand jury transcripts in order to discover what evidence the government intends to rely upon at trial (R. 83 at 2 ¶ 7), that is not a proper use of Rule 6(e). See United States v. Williams, No. 16-CR-111-JPS, 2017 U.S. Dist. LEXIS 61846, at *6-7 (E.D. Wis. Apr. 24, 2017) (stating that Rule 6(e)(3)(E)(ii) is not a catch-all to discover helpful information to assist in trial preparation).